On October 30, 1946, the parties entered into an agreement under the terms of which the plaintiff booked the show known as "Apple of His Eye," featuring Walter Huston and company, for one performance in Worcester, Massachusetts, on December 16, 1946.
On December 12 the plaintiff was advised by the defendant that the performance was canceled due to the illness of Walter Huston, and this is a suit to recover damages for a claimed wrongful breach of contract.
The agreement contained the following covenant: "It is further mutually covenanted and agreed that this agreement and the terms hereof shall be subject to the customs governing uncontrollable circumstances, such as public calamity, fire, war, floods, blizzards, illness of any of the chief artists of the said attraction and the like, and that upon the happening of any of such events no claim for compensation or damages shall be made by either party as against the other."
The defendant claims the show was canceled due to the illness of the principal artist. The plaintiff, however, introduced considerable evidence showing his conduct and movements during the period of the alleged illness and claims there was no foundation to support it.
The general rule seems to be that contracts to perform personal acts are considered as made with the implied condition that the party contracted for shall be alive and capable of performing the agreement, and that death or disability will operate as a discharge. 17 C. J. S. § 465. So that one who engages for a performance of such a personal character that it can be performed only by a particular person is excused from liability by the physical incapacity of that person unless he has clearly assumed the risk of such incapacity.
Generally, it is the promisor himself who is to render the personal services, but the same principle is applicable to contracts where the promisor has agreed that a third person shall render such services and the latter becomes physically unable to do so.Spalding v. Rosa, 71 N.Y. 40, 27 Am. Rep. 7; 6 Williston, *Page 468 
Contracts (Rev. Ed.) § 1940; 2 Restatement, Contracts, § 459. The parties in this agreement recognized this general rule and not only refused to assume the risk of such incapacity but also made it "subject to the customs governing uncontrollable circumstances, such as . . . illness of any of the chief artists . . ."
The question presented is whether the claimed illness by Walter Huston was such as to make participation by him impossible or seriously injurious to his health. It concerns not only his actual physical disability at the time but also the reasonable apprehension or anticipation of such disability. He is not bound to perform so long as failure to perform is reasonable because of existing grounds of apprehension. The extent of the harmful consequences apprehended, and the probability of their occurrence involve questions of degree. Exact boundaries cannot be fixed, but the harm apprehended must be serious and the apprehension reasonable. 2 Restatement, Contracts, § 459. This presents a question of fact.
There was testimony that Mr. Huston had been experiencing a tickling sensation in his throat; that he first noticed it while playing in Boston two weeks before the New Haven engagement; that it seemed to be getting progressively worse; that he never knew when it was going to happen; that he had a fear of going on and getting through a show; and that as it concerned his throat and speaking ability he was gravely concerned over the consequences. Three other appearances were canceled at this time, and immediately upon concluding his engagement in New Haven on December 14 he flew to Chicago where he was attended by his personal physician. There he had specimens taken and a minor operation performed, and it was only when he received a report that there was nothing malignant that he felt free to carry on as before.
A question of credibility is involved. This was the only show ever canceled in his lifetime. Although participating in many courtroom scenes on the stage and screen, this was the first time he had ever been in court. His demeanor on the stand and his forthright answers to the questions propounded evidenced a profound regard for the truth with the same sincerity characteristic of his many public appearances.
 Judgment may enter for the defendant.